STATE OF NEBRASKA, APPELLEE, V.
JEROME M. ENGLEMAN, APPELLANT.
560 N.W.2d 851

Filed February 25, 1997.    No. A-96-324.

Dennis R. Keefe, Lancaster County Public Defender, and Joseph D. Nigro for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.

In this case, the issue is whether a letter on the judge's stationery but signed by his court reporter which purports to find the defendant guilty constitutes a valid finding of guilt *and* is sufficient to satisfy the prerequisites for a final, appealable judgment.

Jerome M. Engleman was sentenced by the county court for driving under the influence of alcohol (DUI), operating a vehicle with fictitious plates, and driving without a driver's license. He appealed to the district court, which affirmed the county court's finding. Engleman now appeals to this court, arguing that the county court erred in imposing sentences without first entering a judgment, erred in receiving the breath tests into evidence, and erred in finding there was sufficient evidence to support his convictions.

## STATEMENT OF FACTS

A Lincoln police officer, Thomas Ward, noticed that a headlight was out on a 1978 copper-colored Buick Regal automobile. As Ward was about to stop the driver of the vehicle, the car stalled, and the driver was unable to restart it. Ward approached the vehicle and identified the driver as Engleman. Engleman informed Ward that he did not have a driver's license, although it was later discovered that he did have an Illinois driver's license. The Arkansas license plate number on the automobile was registered to a white Buick Century, not the copper-colored Buick Regal.

Upon speaking with Engleman, Ward smelled alcohol on Engleman's breath and noticed that Engleman's speech was slurred, that he mumbled, and that he had bloodshot and watery eyes. Ward attempted to have Engleman perform field sobriety tests, but Engleman was unable to do so because of a leg injury. Ward asked Engleman to recite the alphabet, but Engleman explained that he could not because he did not know the alphabet. Engleman was given a preliminary breath test, which he failed. Engleman was then taken to a detoxification center, where he admitted to drinking five or six glasses of beer and where another breath test was administered, which indicated a blood alcohol content of .138.

Three complaints were filed against Engleman, charging him with DUI, in violation of Lincoln Mun. Code § 10.16.030 (1993); operating a vehicle with fictitious license plates, in violation of Lincoln Mun. Code § 10.08.040 (1992); and driving without a driver's license on his person, in violation of Lincoln Mun. Code § 10.16.060(a) (1993). At an arraignment on December 9, 1994, Engleman pleaded not guilty to the three charges.

At a trial upon stipulation held January 10, 1995, Engleman's counsel objected to exhibit 1 (the Department of Health rules which regulate the administration of blood, breath, and urine tests to individuals suspected of DUI). He also objected to the admission into evidence of the results of the preliminary breath test and the subsequent Intoxilyzer breath test, both found in exhibit 2.

Engleman's counsel argued to the trial court that the Department of Health rules were inadmissible because those rules recited incorrect statutory authority for their promulgation. Consequently, Engleman argued that breath tests performed according to those rules did not conform to statutory requirements, nor were the rules adopted pursuant to proper statutory authority. (We note, in passing, that the objection to the admission of the preliminary breath test results was not on the grounds that such test results are inadmissible unless used to establish that probable cause existed to require a suspect to submit to a test of his blood, breath, or urine. See *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986)). Engleman's guilt was conceded on the other two counts, no driver's license and fictitious plates. The court took Engleman's objections under advisement.

On February 14, 1995, on the judge's stationery, a letter signed by his court stenographer was sent to the parties which stated that the "following entry has been made." The letter then purported to quote an entry which overruled Engleman's objections to exhibits 1 and 2 and found Engleman guilty on all three charges. Our search of the record reveals that no oral pronouncement of guilt was made in open court, no finding of guilt was made on the trial docket, and there is no journal entry wherein the trial court found Engleman guilty.

Engleman was present in court with counsel and was sentenced on March 31, 1995, to 10 days in jail, was fined $200, and was ordered not to drive for 6 months for DUI. He was also fined $50 for the fictitious plates and $50 for driving without a driver's license. Engleman then appealed to the district court, which affirmed the county court's holding.

## ASSIGNMENTS OF ERROR

Engleman now appeals to this court, alleging that the district court erred in affirming (1) the county court's failure to record a judgment of conviction as a docket entry, (2) the county court's error in receiving the Department of Health rules and regulations and the results from the two breath tests into evidence, and (3) the county court's finding there was sufficient evidence to support a conviction for DUI.

## ANALYSIS

*Judgment and Sentencing.*

Engleman argues, "The district court erred in affirming the Lancaster County Court's failure to record a verdict as a docket entry." Brief for appellant at 15.

The State argues that Engleman should be barred from asserting this assignment of error, as he failed to assign it when he appealed to the district court. The general rule is that when the district court acts as an appellate court, only those issues properly presented to and passed upon by the district court may be presented to a higher appellate court. *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993). In such circumstances, absent plain error, an issue raised for the first time in the Supreme Court or the Court of Appeals " 'will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition.' " *Id.* at 498, 507 N.W.2d at 483, quoting *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). Engleman did not file a statement of errors in the district court as required by Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 1996). However, we may still consider the errors actually considered by the district court. See *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993). The proceedings and argument before the district court show that no

mention whatsoever was made by Engleman that the county court had not properly entered a finding of guilty against Engleman before sentencing him. Thus, under *Lindsay Ins. Agency*, we are precluded from taking up this precise issue unless we do so under the plain error doctrine.

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, or fairness of the judicial process.

*State v. Dodson*, 250 Neb. 584, 588, 550 N.W.2d 347, 352 (1996).

Neb. Rev. Stat. § 25-1301(2) (Reissue 1995) explains, "Rendition of a judgment is the act of the court, or a judge thereof, in pronouncing judgment, accompanied by the making of a notation on the trial docket, or one made at the direction of the court or judge thereof, of the relief granted or denied in an action." The Nebraska statute which governs appeals from county courts provides that the 30-day appeal period begins to run either when the county court's announcement of the judgment is "noted on the trial docket" or when "the journal entry of the action is filed." Neb. Rev. Stat. § 25-2729 (Cum. Supp. 1994). Nebraska case law has consistently held that judgment is not rendered until both the court's pronouncement is made *and* a written notation is filed in the court's records. *State v. Foster*, 239 Neb. 598, 476 N.W.2d 923 (1991). See, also, *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994).

This court has previously considered whether a letter from the court is sufficient to render judgment. In *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995), the only indication of the juvenile court's decision was in an unfiled letter from the court. The *In re Interest of Teela H.* court determined: "This letter is not the equivalent of an oral pronouncement of the judgment in open court. . . . The final order of the court is not on the trial docket, nor is there a journal entry filed." *Id.* at 609, 529 N.W.2d at 137-38, citing *Tri-County Landfill v. Board of Cty. Comrs.*, 247 Neb. 350, 526 N.W.2d 668 (1995). It is clear that a letter, particularly one signed by a court reporter,

is not the equivalent of an oral pronouncement of the judgment in open court, nor does it equate to a notation made on the trial docket or a filed journal entry.

In the case at hand, while there was a final sentencing order, the only indication that Engleman had been found guilty was the February 14, 1995, letter stating, " 'Defendant is found guilty on Counts 1, 2 and 3. . . .' " This letter is signed by Linda Schrock, "Court Stenographer for JACK B. LINDNER, Judge." While this letter is included in the transcript, it does not contain a county court file stamp. Since there was no oral pronouncement of guilt, no journal entry, and no notation made on the trial docket finding Engleman guilty, an essential part of what is needed as a predicate for both sentencing and appeal is missing.

In a criminal case, judgment occurs when the verdict and sentence are rendered by the court. *State v. McCormick and Hall*, 246 Neb. 271, 518 N.W.2d 133 (1994). To create finality in a criminal case, it is necessary that there be a judgment of conviction followed by a sentence. *State v. Foster, supra*; *Richardson v. Clarke*, 2 Neb. App. 575, 512 N.W.2d 653 (1994). A finding of guilty constitutes a conviction. *State v. Kramer*, 231 Neb. 437, 436 N.W.2d 524 (1989). A final judgment in a criminal action is not the conviction, but the sentence imposed thereon. *In re Interest of Wolkow*, 206 Neb. 512, 293 N.W.2d 851 (1980). A finding of guilty is a conviction, but it is not a judgment or a final order, and there can be no appeal until a sentence has been imposed. *State v. Long*, 205 Neb. 252, 286 N.W.2d 772 (1980).

From the foregoing authority, we conclude that a final, appealable judgment was never rendered because there was never a judgment of conviction, meaning a finding of guilt, and the judgment of conviction is one of two essential elements needed for the finality required before an appeal can be taken. Thus, there was never an appealable order in the county court, and it follows that if there was not an appealable order, the district court lacked jurisdiction, as do we. See *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995). But we cannot merely dismiss this appeal, because sentences, including one of imprisonment, have been imposed on Engleman.

A judgment of guilty is a necessary prerequisite for a sentence to be pronounced, and failure to obtain a conviction prior to sentencing a defendant is a violation of the due process rights guaranteed to citizens by the U.S. and Nebraska Constitutions. See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (holding, " 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt,' " quoting *Speiser v. Randall*, 357 U.S. 513, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958)). See, also, *People v. Rosenthal*, 171 Misc. 954, 956, 14 N.Y.S.2d 794, 797 (1939) (holding, "Before judgment of fine or imprisonment may be imposed, the defendant must plead guilty or be convicted either by the court or by a jury"); U.S. Const. amends. V and XIV; Neb. Const. art. I, § 3. In a criminal case, due process of law requires that a defendant be discharged unless found guilty. *Dutiel v. State*, 135 Neb. 811, 284 N.W. 321 (1939). To sentence a defendant without a finding by the court that he or she is guilty obviously affects a substantial right of the defendant, and to leave this uncorrected would damage the integrity of the judicial process. Thus, we reach this error under the plain error doctrine, even though it was not raised in the district court. Because no judgment of guilt has been rendered against Engleman, the county court improperly sentenced Engleman, and the sentences imposed are null and void.

*Rules and Regulations.*

Engleman argues, "The results of the breath test and the preliminary breath test are inadmissible because they were conducted according to invalid rules issued by the Department of Health." Brief for appellant at 8. Although we are vacating Engleman's sentences and remanding the cause with directions, we discuss this assignment of error, as it is likely to be raised again at the county court level. If an issue is likely to recur upon remand, an appellate court may discuss it, even though it is not dispositive of the appeal. See, *State v. Richter*, 225 Neb. 837, 408 N.W.2d 717 (1987); *Crowder v. Aurora Co-op. Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986). We believe that this is

the case with respect to Engleman's claims concerning the Department of Health regulations.

At the stipulated trial, Engleman's counsel conceded that John Haley, the person who administered the breath test, followed the rules which were offered into evidence, and Engleman's counsel stated, "So we're not disputing whether the machine was working that day." Engleman admits that the Department of Health breath testing procedures were followed, but argues that the rules which regulate the testing procedures are invalid because they reference incorrect statutory authority.

Engleman correctly points out that in 1993 the DUI statutes were recodified and transferred from chapter 39 of the Nebraska Revised Statutes to chapter 60. Consequently, it is no longer Neb. Rev. Stat. § 39-699.11 (Cum. Supp. 1992) (we refer to the most current version of the statute before it was recodified), but Neb. Rev. Stat. § 60-6,201 (Reissue 1993), which requires that breath tests be performed according to the Department of Health rules when the test is being used as competent evidence for the prosecution of a DUI case. The Department of Health rules, which were offered and received into evidence as exhibit 1, list § 39-699.11, and not § 60-6,201, as statutory authority for testing of blood, breath, and urine in DUI cases. Engleman asserts that because the rules which were received into evidence reference incorrect statutory citations, the rules and the subsequent breath test results were inadmissible.

Engleman cites Neb. Rev. Stat. § 84-902 (Reissue 1994), which requires state agencies to file a certified copy of their rules and regulations with the Secretary of State. Engleman argues that § 84-902 requires agencies to file rules so that citizens who are researching the rules will be able to easily identify and locate the statutory authority. This argument is unpersuasive because lawyers and citizens who turn to § 39-669.11 in the statute books will find a cross-reference directing them to Neb. Rev. Stat. §§ 60-6,199 through 60-6,210 (Reissue 1993).

Engleman also cites *Abbott v. Department of Motor Vehicles*, 246 Neb. 685, 522 N.W.2d 421 (1994), and *Gausman v. Department of Motor Vehicles*, 246 Neb. 677, 522 N.W.2d 417 (1994), as authority for the proposition that "[state] agencies must comply with the Administrative Procedure Act." Brief for

appellant at 12. In those cases, Abbott and Gausman failed breath tests and the Department of Motor Vehicles administratively revoked their driver's licenses. The *Abbott* and *Gausman* courts, however, found that the Department of Motor Vehicles had failed to comply with the requirement that the administrative rules which regulate the administrative license revocation procedures be filed. As a result, the court found that the revocations of Gausman's and Abbott's licenses could not stand.

*Abbott* and *Gausman* are distinguishable because the Department of Motor Vehicles completely failed to file the applicable administrative rules and regulations. In this case, the Department of Health's rules which regulate the testing of blood, breath, and urine were on file with the Secretary of State, in accordance with § 84-902.

*State v. Sundling*, 248 Neb. 732, 538 N.W.2d 749 (1995), directly addresses the recodification of the DUI statutes. In *Sundling*, the defendant appealed his conviction of a third DUI offense and argued that his two previous DUI convictions under Neb. Rev. Stat. § 39-669.07 (Cum. Supps. 1990 & 1992) could not be used for enhancement purposes to convict him of a third DUI offense under Neb. Rev. Stat. § 60-6,196 (Reissue 1993). The *Sundling* court affirmed the third-offense DUI conviction and held:

> We have long held that the simultaneous repeal and reenactment of substantially the same statutory provisions is ordinarily construed to be an affirmation or continuation of the original provisions rather than a true repeal. When a statute has been repealed and substantially reenacted with additions or changes, the additions or changes are treated as amendments effective from the time the new statute goes into effect and not as a repeal in the strict or constitutional sense of the term. . . .
>
> Being substantially the same as § 39-669.07, § 60[-]6[,]196 represents an amendment of the statute, renumbered by the Revisor of Statutes. As such, appropriate convictions under § 39-669.07 can be used for sentence enhancement under § 60[-]6[,]196(2)(c).

248 Neb. at 736, 538 N.W.2d at 752. See, also, *State v. Nelson*, 248 Neb. 817, 539 N.W.2d 442 (1995) (citing *Sundling* with

approval and holding that § 60-6,196 is an affirmance of § 39-669.07). Thus, under *Sundling*, if § 60-6,201 is substantially the same as § 39-669.11, then § 60-6,201 is considered an affirmation and continuation of § 39-669.11.

Engleman argues that when the Legislature recodified § 39-669.11 as § 60-6,201, it also amended that section, but Engleman does not tell us how § 60-6,201 differs from § 39-669.11. But what we find is that both § 39-669.11 and § 60-6,201 state, in pertinent part:

> Any test made under [Neb. Rev. Stat. § 39-669.08 (Cum. Supp. 1992) or § 60-6,197 (Reissue 1993)], if made in conformity with the requirements of this section, shall be competent evidence in any prosection under a state statute or city or village ordinance involving operating a motor vehicle while under the influence of alcoholic liquor . . . .
>
> . . . To be considered valid, tests of blood, breath, or urine made under [§ 39-669.08 or § 60-6,197 or Neb. Rev. Stat. § 60-6,211.02 (Reissue 1993)] shall be performed according to methods approved by the Department of Health and by an individual possessing a valid permit issued by such department for such purpose . . . .

We find that the substance of § 39-669.11, which requires that DUI breath tests be performed according to the Department of Health rules, did not change in any material way when it was recodified as § 60-6,201. As a result, under *Sundling*, § 60-6,201 is merely a continuation and affirmation of § 39-669.11. Even though the Department of Health rules cited the old statutory designation, those rules are valid and remain in full force and effect because the amendment did not substantially change the law. The county court properly received into evidence the Department of Health rules, and the results of the breath tests performed in accordance with those rules were not inadmissible on the basis of the statutory references in the rule. The admission of the breath test results, however, may well be problematic for reasons not assigned in this appeal. See, e.g, *State v. Christner*, 251 Neb. 549, 557 N.W.2d 707 (1997); *State v. Emrich*, 251 Neb. 540, 557 N.W.2d 674 (1997); *State v. Hingst*, 251 Neb. 535, 557 N.W.2d 681 (1997).

## CONCLUSION

We reverse the district court's order affirming the county court's "conviction," vacate Engleman's sentences, and remand the cause to the district court with directions to remand it to the county court with directions to enter a judgment.

SENTENCE VACATED, APPEAL DISMISSED, AND CAUSE REMANDED WITH DIRECTIONS.